CHARLES E. RICHARDSON vs. DANIEL F. HOXIE, and another.

Piscataquis.     Opinion April 24, 1897.

*Lien.   Logs.   R. S., c. 91, § 38.*

The defendant contracted to haul certain logs, and in making up his team he hired of the plaintiff a horse, double harness and double sled at an agreed price per month; during part of the time the horse was used alone and part of the time with another horse of the defendant. During all the time the horse was driven by an employee of defendant and was under defendant's control, but the plaintiff was not engaged to drive the horse or perform any labor in connection with these logs. *Held;* that the plaintiff is not entitled to a lien on the logs. He did not within the meaning of the statute labor " at cutting, hauling, rafting or driving," said logs or lumber and therefore is not entitled to " a lien thereon for the amount due for his personal services and for the services performed by his team."

ON REPORT.

*G. W. Howe,* for plaintiff.

*F. E. Guernsey,* for log owner.

SITTING: PETERS, C. J., EMERY, FOSTER, WHITEHOUSE, WIS-WELL, STROUT, JJ.

WHITEHOUSE, J.   This is an action of assumpsit brought by the plaintiff to enforce a lien claimed by him for the service performed by his horse in hauling certain poplar logs.

It is provided by section thirty-eight of chapter ninety-one of the Revised Statutes, that "whoever labors at cutting, hauling, rafting or driving logs or lumber  .   .   .   .   has a lien thereon for the amount due for his personal services and for the services performed by his team."

It appears from the testimony reported that the defendants contracted to haul a quantity of poplar from a tract of land in Willimantic to Ship Pond Stream, and employed five teams in the execution of the work. To make up one of these teams the defendants hired of the plaintiff the horse in question together with a set of double harnesses and a set of double sleds, and agreed

to pay him therefor the sum of ten dollars a month. During a part of the time the plaintiff's horse was harnessed to these sleds by the defendants with another horse of their own and used in this double team, and a part of the time he was used alone, in hauling the logs out of the woods. During the entire period of the service for which the lien is claimed, the plaintiff's horse was driven by an employee of the defendants and was under their superintendence and control. The plaintiff himself was not engaged to drive the horse, or to perform any labor for the defendants, and did not perform any labor whatever for them in connection with these logs, or otherwise, during the time his horse was thus used by them. He did none of the things prescribed by the statute as the basis of a lien in his favor on the logs.

As already seen, the only thing he did having any relation whatever to the performance of the defendants' contract to haul the logs, was to let them his horse, harnesses and sleds for ten dollars a month and to place the property in their possession and under their dominion and control while it continued in their service under this contract.

Upon this state of facts, it is manifest that the services for which the lien is claimed were not performed by the plaintiff's team, but by the defendants' team. It is immaterial that the defendants did not have title to one of the horses in this team. *Kelley* v. *Kelley*, 77 Maine, 135. They were entitled to the possession and control of the horse during the time in which this labor was performed and had a right to receive the fruits of his labor under their contract. The lien is not given and attached by the statute to any horse, harness or sled that may be used in hauling logs, but is acquired by the person who "labors at cutting and hauling logs, etc.," "for the amount due for his personal services and the services performed by his team." The plaintiff neither performed any such labor himself nor in contemplation of law was any labor performed by *his* team.

It is, therefore, considered by the court that the plaintiff has no lien on the logs described in the plaintiff's writ; but it is not con-

troverted that against the defendants, the Hoxie Brothers, there should be entered,

*Judgment for plaintiff for $35 with interest from the date of the writ.*